**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

RIDGEWOOD WATER

Plaintiff,

v.

3M COMPANY, E.I. DU PONT DE NEMOURS & COMPANY, THE CHEMOURS COMPANY, HONEYWELL INTERNATIONAL INC., TYCO FIRE PRODUCTS LP, CHEMGUARD INC., BUCKEYE FIRE EQUIPMENT COMPANY, NATIONAL FOAM, INC., AND DOES 1-50, INCLUSIVE.

Defendants.

MDL No. 2:18-mn-2873-RMG

This Document Relates to No. 2:19-cv-02198-RMG

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND TO THE SUPERIOR COURT OF NEW JERSEY**

## TABLE OF CONTENTS

**I. INTRODUCTION .......... 1**

**II. ARGUMENT .......... 2**

A. Ridgewood's Complaint Affirmatively Disclaims Injuries from MilSpec AFFF. .... 2

B. Removal Under 28 U.S.C. § 1442 Was Improper. .......... 6

i. Speculative Averments Cannot Satisfy 28 U.S.C. § 1442's "Causal Connection" Requirement. .......... 7

ii. Defendants Have Shown No Causal Nexus Between the Charged Conduct and Defendants' Asserted Actions Pursuant to Federal Authority .......... 9

iii. Defendants' Factual Assertions, Even if Credited, Would Not Establish a Complete Defense to Any of Ridgewood's Claims .......... 11

**III. CONCLUSION .......... 13**

## TABLE OF AUTHORITIES

**Cases**

*Bailey v. Monsanto Co.*,
176 F. Supp. 3d 853 (E.D. Mo. 2016) ........ 11, 12

*Batchelor v. Am. Optical Corp.*,
185 F. Supp. 3d 1358 (S.D. Fla. 2016) ........ 5

*Bouchard v. CBS Corp.*,
No. 11-00458, 2012 WL 1344388 (E.D. Pa. Apr. 17, 2012) ........ 9, 11

*Debrocke v. Allis-Chalmers Corp. Prod. Liab. Tr.*,
No. C09-01456CW, 2009 WL 1464153 (N.D. Cal. May 26, 2009) ........ 4

*Dougherty v. A O Smith Corp.*,
No. CV 13-1972-SLR-SRF, 2014 WL 3542243 (D. Del. July 16, 2014) ........ 5

*Fidelitad, Inc. v. Insitu, Inc.*,
904 F.3d 1095 (9th Cir. 2018) ........ 12

*Hagen v. Benjamin Foster Co.*,
739 F. Supp. 2d 770 (E.D. Pa. 2010) ........ 7, 8, 11

*Hayden v. 3M Co.*,
Civil Action No. 15–2275, 2015 WL 4730741 (E.D. La. Aug. 10, 2015) ........ 5

*Holdren v. Buffalo Pumps, Inc.*,
614 F. Supp. 2d 129 (D. Mass. 2009) ........ 8

*Hopkins v. Buffalo Pumps, Inc.*,
No. C.A. 09-181 S, 2009 WL 4496053 (D.R.I. Dec. 1, 2009) ........ 3, 4

*Kelleher v. A.W. Chesterton Co.*,
No. 15–CV–893–SMY–SCW, 2015 WL 7422756 (S.D. Ill. Nov. 23, 2015) ........ 4

*Marley v. Elliot Turbomachinery Co.*,
545 F. Supp. 2d 1266 (S.D. Fla. 2008) ........ 4, 5

*Mesa v. California*,
489 U.S. 121 (1989) ........ 7

*Overly v. Raybestos–Manhattan*,
1996 WL 532150 (N.D. Cal. 1996) ........ 4

*Papp v. Fore-Kast Sales Co.*,
842 F.3d 805 (3d Cir. 2016) ........ 7, 8, 9

*Pratt v. Asbestos Corp.*,
No. C-11-3503 EMC, 2011 WL 4433724 (N.D. Cal. Sept. 22, 2011) ..................................... 4

*Sheppard v. Northrop Grumman Sys. Corp.*,
2007 WL 1550992 (E.D. La. 2007) ............................................................................ 4

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007)........................................................................................... 7

*Weis v. DSM Copolymer, Inc.*,
160 F. Supp. 3d 954 (M.D. La. 2016)...................................................................... 8, 9

*Willingham v. Morgan*,
395 U.S. 402 (1969)........................................................................................... 1

**Statutes**

28 U.S.C. § 1442.............................................................................................. passim

**Rules**

Fed. R. Civ. P. 8(c) ........................................................................................... 9

## I. INTRODUCTION

Defendants Tyco Fire Products LP's and Chemguard, Inc.'s ("Defendants") arguments in opposition to Plaintiff Ridgewood Water's ("Ridgewood") Motion for Remand, Dkt. 264 (Sept. 3, 2019), stretch the liberal construction of the federal officer removal statute, 28 U.S.C. § 1442(a), past its breaking point. As explained in Ridgewood's Memorandum of Law ("Mot."), Ridgewood has alleged injuries from PFOA- and PFOS-laden products *excluding* federally mandated MilSpec AFFF used at federally regulated facilities. *See* Mot., Dkt. 264-1 at 16; *see also* Compl. ¶¶ 68–69.[1] Defendants' Response Brief ("Resp."), like their Notice of Removal, does not contend that Ridgewood's alleged injuries provide a basis for federal officer removal. Instead, Defendants attempt to rewrite the Complaint by speculating that PFOA and PFOS contamination in Ridgewood's drinking water supply "*may have* originated *in part* from the use of MilSpec AFFF at Teterboro Airport in Bergen County, New Jersey," Resp. at 1 (emphasis added), and then bootstrap their purportedly colorable government contractor defense onto that speculation. Ridgewood's complaint expressly waived the only claims and injuries that could arguably give rise to federal officer removal (those arising from federally mandated MilSpec AFFF). *See* Compl. ¶¶ 68–69. To the extent any ambiguity regarding the substance of its claims remains, Ridgewood affirmatively disclaims any injuries traceable to federally mandated MilSpec AFFF.

This is not a case where the plaintiff has alleged injuries from a federally related course of conduct, and "the question raised is whether [Defendants] were engaged in some kind of 'frolic of their own'" or acting under federal direction. *Willingham v. Morgan*, 395 U.S. 402, 409 (1969).

[1] Defendants attempt to eke a concession out of a typographical error in Ridgewood's motion, which inadvertently referenced injuries from "non-AFFF products" instead of "non-*MilSpec* AFFF products." *See* Resp. at 1 n.1 (citing Mot. at 1). In any event, the Complaint and Motion make clear that the injuries alleged are caused by non-AFFF sources of PFAS and non-federally mandated MilSpec AFFF.

Instead, Ridgewood has alleged injuries from an expressly *non-federal* course of conduct and group of products (PFOA- and PFOS-laden products other than MilSpec AFFF), but Defendants aver that some portion of Ridgewood's injuries may have been caused by entirely different conduct and products allegedly manufactured and sold under federal direction. The expert declaration Defendants submitted to shoehorn Ridgewood's allegations into a MilSpec AFFF theory relies on speculative or misconstrued facts that do not bring Defendants' purported basis for removal to the level of plausibility. Even under the relatively permissive standards of the federal officer removal statute, Defendants' evidence fails to meet their burden to establish the necessary causal connection between Ridgewood's injuries and any conduct ordered by the government, and likewise fails to show that Defendants have a colorable federal defense. Ridgewood's Motion for Remand should be granted.

## II. ARGUMENT

### A. Ridgewood's Complaint Affirmatively Disclaims Injuries from MilSpec AFFF.

Removal was improper because Ridgewood's Complaint expressly disclaims any injuries or claims of liability arising from MilSpec AFFF released at sites where that product was used or stored under federal directive:

> Ridgewood has diligently investigated known and potential sources of PFAS contamination in the District's wells and water supply. Ridgewood cannot identify any military or federally-regulated airport as a source of such PFAS contamination, and on that basis alleges that the PFAS contamination in its wells is not from such sources.
>
> There are no U.S. government military sites or federally-regulated facilities that are release sites/sources of contamination of Ridgewood's wells.

Compl. ¶¶ 68–69; *accord* Mot. at 1–2, 11–12. Consistent with the Complaint, Ridgewood's Motion correctly explains that Defendants cannot now change the theory of causation to suit their

proffered federal defense by forcing Ridgewood to rely on a theory of injury *not actually alleged*. On this basis alone, the Court should remand this case.[2]

Courts around the country have granted remand where a plaintiff disclaims injuries from conduct under the auspices of federal authority. In *Hopkins v. Buffalo Pumps, Inc.*, No. C.A. 09-181 S, 2009 WL 4496053, at *1 (D.R.I. Dec. 1, 2009), for example, the plaintiffs alleged that a laborer contracted mesothelioma due to exposure to asbestos-containing products from the 1940s through the 1960s. The defendants removed, asserting federal officer jurisdiction because the plaintiffs admitted the injured laborer was exposed to asbestos while working at a shipbuilding site where the defendants' products were installed on Navy ships. *Id.* The plaintiffs moved to remand, arguing that his complaint "exclude[ed] any claims for exposure while working with [defendants'] products on Naval ships . . . ." *Id.* at *6. The court granted the motion, finding that while "the focus should be on the existence of a colorable federal defense and not on Plaintiffs' Complaint," the defendants had "premised removal on the assumption that Plaintiffs were suing, at least in part, for claimed exposure to asbestos for work on Navy ships," which the plaintiffs had in fact expressly waived. *Id.* at *7. Because the plaintiffs were only pursuing claims based on exposure at non-federal sites under non-federal contracts, the court found they were "not pursuing a claim against which [any defendant] has shown the existence of a colorable federal defense," and remand was therefore proper. The court observed that if the plaintiffs "reverse[d] course in the future and

---

[2] Defendants tersely reference Plaintiff's counsel's membership on the Plaintiffs' Executive Committee ("PEC") as though it has relevance to the existence or non-existence of subject matter jurisdiction for this case. *See* Resp. at 2 n.3. It does not. Respectfully, those cases involving AFFF where there is subject matter jurisdiction should be before your Honor, and for those actions Counsel appreciates the opportunity to continue to serve on the PEC.

attempt[ed] to assert a claim based on claimed exposure" during work under Naval contracts, the defendants "can file a renewed notice of removal under 28 U.S.C. § 1442 at that time." *Id.* [3]

The same analysis applies here: Ridgewood has not sought relief for injuries deriving from federally mandated use of MilSpec AFFF (the only facts that could give rise to a federal contractor defense and therefore federal officer removal). Rather, Ridgewood seeks relief for exposures to PFAS arising from products not subject to any federal directive. Defendants have not advanced a colorable federal defense as to those exposures, and remand is required.

This case is distinguishable from the cases Defendants cite in which "circular" waivers in support of remand were rejected. In *Marley v. Elliot Turbomachinery Co.*, 545 F. Supp. 2d 1266, 1274 (S.D. Fla. 2008), the asbestos design defect plaintiff did not waive claims arising from specific conduct, but rather attempted to waive "every claim arising under the Constitution, treaties, or laws of the United States," including acts of omissions of "any person acting under" a federal officer, and moved to remand on that basis. The court denied remand, because that

[3] Numerous other cases stand for the same proposition, i.e., a plaintiff's exclusion of claims based on federally directed conduct consequently excludes the possibility of federal officer removal based on such conduct. *See Kelleher v. A.W. Chesterton Co.*, No. 15–CV–893–SMY–SCW, 2015 WL 7422756, at *3 (S.D. Ill. Nov. 23, 2015) (remanding asbestos case where "[i]n the complaint and the notice of disclaimer, [the plaintiff] has made clear statements that his claims [based on asbestos exposure] do not include any work performed while in the military or on military machinery"); *Pratt v. Asbestos Corp.*, No. C-11-3503 EMC, 2011 WL 4433724, at *1 (N.D. Cal. Sept. 22, 2011) (granting remand where asbestos plaintiff waived all claims "relating to any exposure that occurred at government sites and on Navy vessels"); *Debrocke v. Allis-Chalmers Corp. Prod. Liab. Tr.*, No. C09-01456CW, 2009 WL 1464153, at *2 (N.D. Cal. May 26, 2009) ("Plaintiffs have expressly disclaimed and waived any claim arising out of or related to any asbestos exposure aboard federal jobsites and navy vessels. . . . Therefore, this waiver justifies remand."); *Sheppard v. Northrop Grumman Sys. Corp.*, No. CIVA 07-2208, 2007 WL 1550992 (E.D. La. 2007) (remand granted based on asbestos plaintiff's disclaimer in complaint of any claims due to exposure in a federal enclave or caused by any acts or omissions of party committed at the direction of a federal officer); *Overly v. Raybestos–Manhattan,* No. C-96-2853 SI, 1996 WL 532150 (N.D. Cal. 1996) (remand granted based on asbestos plaintiff's written waiver of design defect claims).

disclaimer was essentially coextensive with plaintiff's liability case: If the defendants' allegedly defective asbestos warnings were required by the government, then the disclaimer would apply, but the defendants would have had a colorable federal contractor defense that they should have been able to assert in federal court pursuant to the text and purpose of § 1442. *Id.* Importantly, the court distinguished cases where remand was granted because the plaintiff "waived any liability arising out of work done on federal premises, irrespective of whether the work was done under the requirements of a federal agency or not." *Id.* Under those circumstances, as in this case too, the waiver is effective and remand is proper.

The District of Delaware accurately summarized the distinction between decisions like *Marley* and decisions like *Hopkins* in a case remanding similar asbestos claims to state court:

> A review of the relevant case authorities reveals that courts recognize a distinction between artful pleading for purposes of circumventing federal officer jurisdiction, and express disclaimers of the claims that serve as the grounds for removal under Section 1442(a)(1). In the latter case, federal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based.

*Dougherty v. A O Smith Corp.*, No. CV 13-1972-SLR-SRF, 2014 WL 3542243, at *10 (D. Del. July 16, 2014), *report and recommendation adopted sub nom. Dougherty v. A.O. Smith Corp.*, No. CV 13-1972-SLR-SRF, 2014 WL 4447293 (D. Del. Sept. 8, 2014). The latter set of courts "concluded that disclaimers which 'explicitly renounced claims of a specific nature' were sufficient to warrant remand of an action where the removal was based on the federal officer removal statute." *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1364 (S.D. Fla. 2016) (quoting *Hayden v. 3M Co.*, Civil Action No. 15–2275, 2015 WL 4730741, at *4 (E.D. La. Aug. 10, 2015)); *see id.* at 1362–64 (collecting cases). That statement likewise describes Ridgewood's claims, and remand should be granted.

The Court's order denying the State of New York's motion for remand is distinguishable for the same reason. *See In re: Aqueous Film-Forming Foams Products Liability Litigation*, Dkt. 103, Case No. 2:18-mn-2873-RMG (May 24, 2019). There, the State expressly alleged that the defendants' "AFFF products containing PFOS and/or PFOA were used by the Air National Guard and the United States Air Force on military bases and at civilian airports and firefighting training centers in New York," and that "Tyco manufactured and sold AFFF products containing PFOS/PFOA *to the U.S. military*, which used and stored the products at certain sites." *Id.* at 1, 4 (emphasis added). The Court found that because the State expressly alleged it was injured by MilSpec AFFF sold to the government, the defendants had pleaded a colorable federal contractor defense and satisfied § 1442's "acting under" and causation elements. *Id.* at 4–5. Here, in sharp contrast, Ridgewood's allegations explicitly exclude the types of MilSpec AFFF sales to the government or at the government's direction, and uses at federally regulated facilities that provided removal jurisdiction over the State's claims.

**B. Removal Under 28 U.S.C. § 1442 Was Improper.**

Even if Ridgewood's disclaimer of injuries from federally mandated MilSpec AFFF could not defeat jurisdiction, Defendants have failed to meet their burden to establish the elements of federal officer removal. Notably, Defendants do not refute that AFFF products Defendants sold to nongovernmental third parties, as well as PFOA- and PFOS-containing products other than MilSpec AFFF, cannot support a government contractor defense, and thus do not support federal officer removal here. Sidestepping that point, Defendants instead seek to prove the causal nexus element through an implausible theory not pleaded—and affirmatively disclaimed—in Ridgewood's complaint. *See* Resp. at 14–19. Defendants' recasting of the Complaint is insufficient to establish the second element of federal officer removal—that the plaintiff's claims are based

upon the defendant's conduct "acting under" the United States. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805 at 812 & 813 (3d Cir. 2016).

**i. Speculative Averments Cannot Satisfy 28 U.S.C. § 1442's "Causal Connection" Requirement.**

Contrary to Defendants' arguments, courts can and must consider the sufficiency of a removing defendant's allegations and evidence in support of federal officer removal. Here, Defendants' allegations fall short of meeting their burden to show plausible facts supporting jurisdiction under the federal officer removal statute, and in particular the statute's causal connection requirement. A defendant must make a well-settled four-part showing: "(1) [the defendant] is a 'person' within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct 'acting under' the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are 'for, or relating to' an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims." *Papp*, 842 F.3d at 812.

The third element, "the 'nexus' or 'causation' requirement, demands that the alleged conduct have been undertaken 'for or relating to' a federal office." *Id.* at 813. To show the necessary relationship, a removing defendant "must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty." *Mesa v. California*, 489 U.S. 121, 131–32 (1989). As noted in Ridgewood's Motion, when a defendant asserts a federal contractor defense to support federal officer removal, the causal nexus analysis "is essentially the same as that associated with the colorable defense requirement," the test's fourth element. *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 785 (E.D. Pa. 2010) (punctuation omitted). While § 1442 is "liberally construed," *see, e.g.*, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007), the removing defendant must still identify facts that, if credited, "would establish a complete

defense at trial." *Hagen*, 739 F. Supp. 2d at 783. That is so because "[a] colorable federal defense, as *Mesa* itself makes plain, is not a requirement that may be reduced to the point of vanishing altogether." *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 141 (D. Mass. 2009). Thus, on a motion to remand, the parties' respective evidence must "be considered to the extent that the facts presented, if persuasive, would directly undermine one of the four elements of § 1442 that must be present to confer jurisdiction." *Papp*, 842 F.3d at 811, n.4.

Courts have not hesitated to reject federal jurisdiction and grant remand where a removing defendant's showing fails to satisfy any element of § 1442, in particular the causation element. In *Weis v. DSM Copolymer, Inc.*, 160 F. Supp. 3d 954, 957–58 (M.D. La. 2016), for example, a surviving spouse and children brought premises liability and failure to warn claims in Louisiana state court alleging that their decedent developed mesothelioma from exposure to asbestos while he worked as a maintenance worker at defendant's facility between 1956 and 1966. The defendant removed under the federal officer removal statute, asserting a federal contractor defense on the bases that (1) the facility was designed and constructed under strict criteria from the United States military, (2) a portion of the facility was owned by the United States until 1955 and the government maintained an unconditional right to possession and use of the facility until 1965, and (3) the government designs for the facility required the use of asbestos insulation. *Id.* at 958–59, 961–62. The defendant presented affidavits purporting to show that the government retained control over safety procedures at the facility through 1965, including any safety or health warnings concerning asbestos; the court reviewed each of those affidavits in detail, and found that they either lacked specific information concerning the government's purported control of safety procedures at the facility, or were silent on those procedures during the period of the decedent's employment. *Id.* at 967–68. As such, the court found that the defendant "fail[ed] to meet the causal nexus required in

relation to Plaintiffs' failure to warn claim." *Id.* at 968. With respect to the premises liability claims, the court found that while the defendant's evidence showed the government's design for the facility required it to have asbestos insulation, there was "no evidence that [the defendant] was ever precluded from removing the asbestos-containing materials once [it] took full ownership and control of the Facility," and thus no evidence the government required it to use asbestos insulation during the decedent's employment. *Id.* at 970–71. On that evidence, the court found that causal connection requirement was not met as to the premises liability claims either. *Id.* at 972.

In short, Defendants' protestations to the contrary notwithstanding, courts should not rubber stamp a defendant's contentions in support of federal officer removal. Instead, the court is charged with ensuring the facts asserted plausibly support the invocation of federal subject matter jurisdiction. *Cf. Bouchard v. CBS Corp.*, No. 11-00458, 2012 WL 1344388, at *8 (E.D. Pa. Apr. 17, 2012) (comparing the notice pleading requirement for asserting an affirmative defense under Fed. R. Civ. P. 8(c) with the more demanding standards for removal under 28 U.S.C. § 1442, and noting: "If Defendant had removed without averring sufficient facts to remove under § 1442(a)(1), Defendant would have run the risk of a federal court finding that the removal was without merit and it may well have subjected itself to fees and costs, and potentially Rule 11 sanctions, for filing a baseless notice of removal."). As described below, Defendants fail to make the necessary showing here.

**ii. Defendants Have Shown No Causal Nexus Between the Charged Conduct and Defendants' Asserted Actions Pursuant to Federal Authority.**

Defendants have not shown that they meet the causal nexus for federal officer removal. To satisfy that requirement, the alleged conduct must have been carried out under the asserted official authority. *See, e.g.*, *Papp*, 842 F.3d at 813 (removal proper where the "heart" of the plaintiff's claim as alleged involved a product manufactured to federal government specifications). But here,

the conduct charged in the Complaint has nothing to do with MilSpec AFFF from Teterboro Airport, nor have Defendants connected any conduct purportedly carried out under federal control to Ridgewood's injuries.

The declaration of Mr. John A. Connor does not bring Defendants' theory that Ridgewood was in fact injured by PFAS from Teterboro Airport into the realm of plausibility for multiple reasons. First, Mr. Connor identifies several other public water suppliers that are part of an interconnected group of suppliers that buy and sell from each other, and which connect to Ridgewood in a complex and diffuse manner. Connor Decl. ¶ 21. Although Mr. Connor argues it is "premature and scientifically unreliable to declare that Teterboro Airport cannot be a source of PFAS to Ridgewood Water" without further evaluation, *id.* ¶ 22, Mr. Connor has undertaken no such evaluation and offers no plausible theory by which these water systems could have received PFOA or PFOS contamination from the Teterboro Airport. At bottom, his statements amount to pure speculation and present no actual evidence of the alleged transmission of PFAS from Teterboro to Ridgewood, and are thus insufficient to render Defendants' contentions plausible.

Second, by Mr. Connor's own estimation, the groundwater at and beneath Teterboro Airport "has not yet been sampled and tested for PFAS contamination." *Id.* ¶ 14. Defendants have therefore presented no evidence at all concerning whether and to what extent PFAS contamination is even present at Teterboro Airport, let alone migrating from the Airport to anywhere else.

Third, and relatedly, neither Defendants nor Mr. Connor have averred that any federally mandated MilSpec AFFF from Teterboro Airport could constitute a substantial factor in Ridgewood's injuries, nor even provided any evidence at all that any federally related contamination has any reasonable prospect of ever reaching Ridgewood's water supplies. Defendants say only that Teterboro Airport "*may have*" contributed to Ridgewood's PFAS "*in*

*part*," Resp. at 1, and Mr. Connor says only that "*some*" PFAS from Teterboro Airport might have reached Ridgewood's water supplies, Connor Decl. ¶ 6. Even if these statements are credited as true, they could not support a complete defense to any of Ridgewood's claims, which arise from non-MilSpec AFFF sources of PFOA and PFOS (and which, again, affirmatively disclaim injuries from federally mandated MilSpec AFFF).

Courts have found that § 1442's causal nexus requirement is not met when the defendant fails to show that its allegedly federally controlled conduct caused the injury complained of. *See, e.g.*, *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 863 (E.D. Mo. 2016). In *Bailey*, the plaintiffs argued that, where "the vast, overwhelming majority of [the defendant's] products were sold to private companies," a "vanishingly small number of PCB sales [ ] made to government purchasers" did not make the case removable on federal officer grounds. *Id.* at 863. More specifically, the evidence demonstrated that, "over the years, 1.2 billion pounds of PCBs were sold," but the defendants "provided evidence that only 47,000 pounds of PCBs were sold to the government." *Id.* Under that reasoning, the court concluded that defendants failed to meet the causal connection requirement for federal officer removal. *Id.* at 870.

Here, as in *Bailey*, the vague, speculative, and unquantified PFAS contamination that Defendants allege may have traveled from Teterboro Airport to Ridgewood is insufficient to bring their basis for removal from merely possible to plausible.

**iii. Defendants' Factual Assertions, Even if Credited, Would Not Establish a Complete Defense to Any of Ridgewood's Claims.**

Defendants are only entitled to removal if they identify facts in support of their purported federal defense which, if credited, "would establish a complete defense at trial." *Hagen*, 739 F. Supp. 2d at 783; *Bouchard v. CBS Corp.*, 2012 WL 1344388, at *7 (same). But neither Defendants nor their expert declarant actually contend that Defendants are entitled to a complete defense to

any of Ridgewood's claims. At most, their assertions, if credited, would show that *a portion* of Ridgewood's injuries from PFAS *might* arise from federally mandated MilSpec AFFF, damages which a federal contractor defense might then bar (if they were not already expressly disclaimed). Defendants do not assert, however, that any of Ridgewood's *claims* would be wholly subject to a federal contractor defense, nor could they.

Critically, Defendants do not assert any federal defense to those injuries Ridgewood alleges from PFAS sources not subject to a federal contractor defense—instead, they assert that "the PFAS *may have* originated *in part*" at Teterboro Airport. Resp. at 1 (emphasis added). Mr. Connor likewise concludes at most that "it is plausible that [AFFF] released at Teterboro Airport are a source of *some* PFAS that has reached water supplies used by Ridgewood Water." Connor Decl. ¶ 6 (emphasis added). Where a manufacturer sells a product both to the general public and to the government or at federal direction, the federal contractor defense will not provide a defense for the former category of sales. *Cf. Bailey*, 176 F. Supp. 3d at 870 (granting remand where defendant's sales of PCBs to the government or at government direction "relative to the total amount of PCBs allegedly persisting in the environment and food chain, is simply too small to satisfy the requirement that there be a causal connection between the conduct that was taken under federal authority and Plaintiffs' claims"); *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1100 (9th Cir. 2018) (no government contractor defense—and therefore no federal officer removal—in the absence of a government contract for the product allegedly causing the injury). The products that are actually the subject of Ridgewood's claims were not manufactured or sold under federal direction, and Defendants' attempt to rewrite the complaint based on speculative injuries not pleaded is at most a *partial* defense, which does not entitle them to removal under § 1442.

## III. CONCLUSION

For the foregoing reasons, removal to federal court was improper. Plaintiff Ridgewood Water respectfully requests that the Court remand this case to the Superior Court of New Jersey.

Dated: September 24, 2019

**SHER EDLING LLP**

*/s/ Matthew K. Edling*
MATTHEW K. EDLING
matt@sheredling.com
VICTOR M. SHER
vic@sheredling.com
STEPHANIE D. BIEHL
stephanie@sheredling.com
KATIE H. JONES
katie@sheredling.com
TIMOTHY R. SLOANE
tim@sheredling.com
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
(628) 231-2500

Matthew S. Rogers
msr@mrogerslaw.com
**LAW OFFICES OF MATTHEW S. ROGERS, L.L.C.**
123 Prospect Street
Ridgewood, NJ 07450
(201) 857-3700

*Attorneys for Plaintiff Ridgewood Water*